## JAMES PHELPS *vs.* PARIS TOURTELLOT.

The owner of a mill on a stream, and of a right to flow during half the year part of the meadow on which the head of water was raised, and of the right to flow the residue of the meadow all the year, granted to the owner of a mill above his own and at the outlet of the meadow a privilege to draw water " sufficient to carry a water wheel well constructed, with twelve feet head and fall, for two common blacksmith bellows, and, should the head and fall be less than twelve feet, sufficient to carry one bellows twelve hours in twenty four, in either case in the day time, as near as may be." *Held,* that the grantee took, as against the grantor's mill, the whole power granted for the whole year; but, as against third persons, only that power limited by the restriction of the grantor's right of flowing part of the meadow; that the rights acquired by the grant might be designated in equity by some other mode of measurement; that the restriction was not affected by a previous reservation to an intermediate mill, also owned by the grantor, of a right to flow the whole meadow at all seasons; and that a subsequent purchaser of the lowest mill and of the land occupied by the dam and reservoir, if he did not use that mill, was not bound to keep the dam in repair for the benefit of the privilege above granted; but could not hoist the gates of the dam and thus waste the water to the injury of that privilege.

ACTION OF TORT, praying for relief in equity, by the owner of a machine shop on Mill Brook in Sutton, with a privilege of drawing water " sufficient to carry a water wheel well constructed, with twelve feet head and fall, for two common blacksmith bellows, and, should the head and fall be less than twelve feet, sufficient to carry one bellows twelve hours in twenty four hours, in either case in the day time, as near as may be ; " and of another privilege below, known as the " Hooker privilege ; " to compel the owner of a saw mill still lower down, and of the reservoirs and dams above, by which the whole head of water was raised, to keep in repair the dam at the outlet of the lower reservoir above the plaintiff's machine shop ; to restrain him from hoisting the gates of the dam, against the plaintiff's rights ; to ascertain whether the defendant's right to draw water for his saw mill was not servient to the plaintiff's rights ; and to determine the manner in which the plaintiff might draw water for the purpose of satisfying his rights, and " prescribe the quantity of water, which the plaintiff may so draw, by some definite, intelligible and convenient admeasurement ; " to fix the time during which the defendant might draw the water from the

reservoir for the purpose of enabling him to dig clay or manure from the meadow covered thereby ; and for other relief. Upon this bill a temporary injunction was issued.

The defendant, in his answer, objected to the jurisdiction of the court in equity over the matters alleged, and set forth his own claims. The case was submitted to the court upon the bill and answer and a statement of facts, so much of which as is material is given in the opinion.

This case was argued at September term 1856.

*I. M. Barton,* for the plaintiff.

*P. C. Bacon,* for the defendant.

THOMAS, J. The first question which arises is, what are the respective titles of the parties, plaintiff and defendant.

The plaintiff owns the site of the machine shop and privilege as to water, conveyed by deed of Amos Waters, Jr., of August 14th 1846. That is the same water privilege conveyed by Phelps to said Waters, by deed of June 22d 1835. It is not restricted to the blacksmith's business. *Tourtellot* v. *Phelps,* 4 Gray, 370.

The plaintiff also owns the Hooker privilege, by two deeds of December 1st and December 14th 1855. That is an estate derived from Jason Waters, as follows : Jason Waters was the owner of the (now called) Hooker privilege and of the farm connected with it, and the lower half of the meadow, which constitutes the lower reservoir. So holding, in 1823 he conveyed to Daniel Tourtellot the farm, " reserving the right of flowing at all seasons the meadow by the brick yard (with the privilege of passing and repassing to the dam for the purpose of raising and shutting the gate and of repairing the same dam) except at such times and seasons as the said Tourtellot shall wish to dig clay or manure."

The land of the lower reservoir, subject to the easement of flowing, &c., and with the right of digging clay or manure, came by mesne conveyances to the defendant. The defendant owns the Tourtellot land, on which are both the reservoirs and dams. He also owns the saw mill, which is below the Hooker privilege on the same stream.

Both parties claim the land they own from Judah Waters. In 1780 Judah owned the machine-shop lot on both sides of Mill Brook, and he also owned the lower part of the meadow flowed. He owned the site of the dam at the outlet thereof, and the dam. He owned the saw-mill privilege below (now in the defendant) with a large tract of other contiguous land.

On the 5th of July 1780, Judah Waters conveyed to Samuel Waters the site of the plaintiff's machine shop, " together with the privilege of flowing the meadow up the brook from the premises, and keeping up the dam to flow said meadow annually to the first day of April, for the benefit of carrying on the blacksmith business at the shop on the premises ; provided the water is not to be raised to flow said meadow till the first day of November annually, and not to be kept up after the first day of April, except it be by the consent of either party. And the said Samuel Waters is hereby granted liberty to pass and repass to said dam, and repair the same, as shall appear beneficial for the uses aforesaid of carrying on said works by water."

The meadow to be flowed is up the brook from the premises some forty to fifty rods ; the dam which the grantee had the right to keep up was at the outlet of the meadow; and he had the right of passing and repassing across the grantor's land to said dam, and to repair the same. Samuel Waters, when he received this deed, owned the upper half of the lower meadow. From Samuel Waters the right to flow the upper half, together with the estate and privilege conveyed by Judah Waters, came to the plaintiff in 1830. In the same year the plaintiff became the owner of the saw mill.

In 1832 the defendant and John A. Tourtellot, having built a new dam above the old one, at the outlet of the lower meadow, conveyed to the plaintiff all the privileges of and to the new dam, which Phelps had in and to the old dam ; Phelps releasing all right in the old.

In this state of the title, the plaintiff, Phelps, in 1832 made a deed to Samuel Waters and Peregrine Waters of the site of the machine shop and his rights to the dams and reservoirs above. Samuel and Peregrine in 1833 reconveyed to Phelps their rights

to the dams and reservoirs, without the machine-shop site, granting to Phelps the right to use said ponds, dams and water for the benefit of his saw mill or any works he may have below the land of the grantors, as a right prior to any right of the grantors. The site of the machine shop was not reconveyed; but this passed from Samuel and Peregrine Waters, by several mesne conveyances, to Amos Waters, Jr.

Amos Waters, Jr. being the owner of the machine-shop site, Phelps made to him the deed of June 22d 1835. That deed conveys to Waters a privilege to draw water from the dams of said ponds or reservoirs, " sufficient to carry a water wheel well constructed, with twelve feet head and fall, for two common blacksmith bellows, and, should the head and fall be less than twelve feet, sufficient to carry one bellows twelve hours in twenty four hours, in either case in the daytime, as near as may be."

Phelps, the plaintiff, had before 1835 acquired the right to flow the upper meadow, constituting the upper reservoir, by deeds of Samuel Rich and Jonathan Davis. No question is made by the parties as to this right, or that it existed throughout the year.

In 1835, then, when Phelps made this deed to Amos Waters, Phelps's title was as follows : He owned the right to flow the upper meadow at all seasons of the year. He owned the right to flow the upper half of the lower meadow. He owned the right to flow the lower half from the first of November to the first of April annually, if this right could be severed from the site of the machine shop. He did not own the site of the machine shop; that was in Amos Waters.

In this state of the title, what could he convey as against the owner of the Hooker privilege, or the owner of the land constituting the lower half of the reservoir? The answer would seem to be, the right as stated in his deed, with the limitation as to time, resulting from the defect of his own right; but, as against the saw mill then owned by him, without the restriction. With this last qualification the effect of the conveyance of Phelps in 1835 would be to give to Amos Waters, the owner

of the site of the blacksmith's shop, the right to use the quantity of water as measured in the deed, with the limitation as to time stated in the deed of Judah Waters to Samuel Waters, that is, from November to April.

It is to be observed, that in a deed made by Daniel Tourtellot to Paris Tourtellot in 1824 the reservation is of a right to flow at all seasons of the year. But Daniel held under the deed from Jason Waters of October 16th 1823, and the reservation made is the same as that made by Jason Waters. Jason, when he made the reservation, was the owner of the Hooker privilege; and this reservation was for the Hooker privilege, and is appurtenant to that only. The plaintiff's purchase of the Hooker privilege in 1855 did not enlarge the rights incident to the machine shop. *Ballou* v. *Wood*, 8 Cush. 48. The rights incident to the Hooker privilege are not transferred to the machine-shop privilege. The right now appurtenant to the machine shop therefore is the right conveyed by the deed of Phelps to Waters in 1835, with the limitation of time from November to April, owing to the fact that the grantor had no more to convey. The quantity of power is capable of being designated by some other mode of measurement. This may in equity be done by reference to a master, who may be directed to inquire what has been the use under the deed. *De Witt* v. *Harvey*, 4 Gray, 486.

We do not see that, by becoming owner of this dam at the outlet of the lower meadow, the defendant became bound to keep it in repair for Phelps or the owner of the machine-shop privilege. If he uses the saw mill, he may be bound to contribute to the support of the dam. On the other hand, he cannot hoist the gate of the dam, and suffer the waters to run to waste so as to defeat the rights of the machine-shop privilege. As against the saw mill the water rights of the machine shop are prior and dominant; for, when conveyed by Phelps in 1835, he was the owner of the saw mill.

The right of the defendant to dig clay and manure seems to be at his pleasure. No abuse of this right is shown, and there is no occasion for a decree on this subject.

The injunction, so far as it forbids the defendant to hoist the

Phelps *v.* Tourtellot.

gate to waste the water of the reservoirs, should continue; but he should not be enjoined to keep the dams in repair.

It appearing that the plaintiff, at the time of instituting his suit, was the owner of the machine-shop privilege and all rights annexed thereto, of the Hooker privilege and of all the rights embraced in the Jason Waters reservation, the question of the relative rights of the machine-shop privilege and of the Hooker privilege becomes a mere abstract question, the decision of which is not necessary to the settlement of the relative rights of the plaintiff and defendant.

For the same reason it is not necessary to adjust or fix by decree a new mode of measuring the power annexed to the machine-shop privilege. *Decree accordingly.*

# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1857
## AT CAMBRIDGE.

*—————*

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS,